UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

DANIEL COBBLE, ET AL.                                                                                     Plaintiffs

v.                                                                    Civil Action No. 3:21-cv-000415-RGJ-RSE

T-MOBILE SPRINT, ET AL.                                                                                Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant T-Mobile Sprint ("Sprint") moves to compel arbitration. [DE 1-1 at 44-125]. Plaintiffs Daniel Cobble ("Mr. Cobble') and Rufina Cobble ("Mrs. Cobble") (collectively, "the Cobbles"), responded, [DE 8], and Sprint replied, [DE 11]. Mr. Cobble individually filed four other motions: a "Motion to Return Case to State Court," [DE 9], a "Motion for the Court to Report § 1332 Error to Congress," [DN 10], a reply to the foregoing motions and a surreply to Sprint's Motion to Compel Arbitration, [DN 16], and an "Amended Motion for the Court to Report to Congress the Unconstitutionality of All Removal Statutes." [DN 17]. These matters are ripe. For the reasons below, the Court **GRANTS** Sprint's Motion to Compel Arbitration [DE 1-1] and **STRIKES** Mr. Cobble's motions. [DE 9; DE 10; DE 16; DE 17]. The Cobble's claims against Sprint are **STAYED** pending arbitration. To the extent that Mr. Cobble moves individually for a new judge, to initiate criminal charges, and for remand, [DE 42], his motions are **DENIED**.

**I.      BACKGROUND**

The Court incorporates the procedural and factual background set forth in its order denying the Cobble's motion for reconsideration. [DE 34].

On March 18, 2022, Mrs. Cobble was ordered to submit signature pages for DE 9, DE 10, DE 16 and DE 17 within twenty-one days of the Court's order and warned that they would be

1

stricken from the record if she did not. [DE 30 at 299]. The Court remanded Sprint's motion to compel arbitration and the above four motions from the active docket, noting that it would reinstate them following expiration of the compliance period. [DE 30 at 300]. On March 31, 2023, the Court again warned Mrs. Cobble that the filings would stricken if she did not sign them. [DE 34 at 318]. The Cobbles objected to the Court's order, contending that Rule 11(a) did not require Mrs. Cobble to sign the pleadings. [DE 35 at 319]. While the Cobbles attached Mrs. Cobble's signature pages to their objections, they added a disclaimer to her signatures:

> To protect Rufina, where applicable, the following disclaimer is included above her signatures: 'I, Rufina Cobble, do not understand the herein pleadings. I sign below pursuant to the Court's March 31, 2023 Order.'

[*Id.*].

On June 1, 2023, the Cobbles filed a letter asking the Court to "order discovery for this case." [DE 36 at 327]. Mr. Cobble filed two more letters on November 22 and 29, 2023, warning Chief Judge Stivers to "require" this Court to order "settlement or case discovery," or else Mr. Cobble would "file the criminal Complaint(s) for liens to remove Judges." [DE 37 at 329; DE 40 at 345]. On January 5, 2024, Mr. Cobble filed another letter addressed to Chief Judge Stivers, "demand[ing] the assignment of new judges," that the Chief Judge "initiat[e] criminal charges against Jennings and the other court officers," and that he "rescind" one of Cobble's unrelated civil actions back to state court. [DE 42 at 349]. If the Chief Judge did not, Mr. Cobble stated he would

2

file the previously mentioned criminal complaints, and "will have **no choice**" but to file one against the Chief Judge as well. [*Id*.].[1]

On February 16, 2024, the Magistrate Judge entered a scheduling order and again warned Rufina that she must sign the filings in accordance with the Court's orders. [DE 46; *see* DE 30; DE 34]. The Cobbles again attached signature pages with the above disclaimer, "remind[ing] the Court" that Rule 11 'does not require the signatures of both plaintiffs on the pleadings" because Mr. Cobble was representing them both. [DE 50 at 366].[2]

On March 8, 2024, the Cobbles filed a "Notice of Core Objections," asking the Court to deny Sprint's motion to compel arbitration. [DE 54].

## II. DISCUSSION

### 1. Mr. Cobble's Motions

Adding a disclaimer to a party's signature does not comply with Rule 11's signature requirements. *See e.g., Spann v. T-Mobile N.A*., No. 2:23-cv-00189-GMN-VCF, 2023 U.S. Dist. LEXIS 124302, at *2 (D. Nev. July 19, 2023) (to comply with Rule 11, "Plaintiff must not sign his name with any disclaimer, such as the phrase 'without recourse.'"). As the Sixth Circuit has noted:

---

[1] Mr. Cobble filed a similar letter addressed to Chief Judge Stivers in *Cobble v. Trump et al*., 3:20-cv-00298-CHB, DE 21 (W.D. Ky.). As that court reminded him, "the undersigned, and not Chief Judge Stivers, is the judge presiding over this action. Therefore, the undersigned is the appropriate judge to rule upon Plaintiff's motion[.]" [*Id*. at 186]. And as that court also noted, only federal prosecutors have the authority to initiate federal criminal charges. [*Id*. at 187] (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.").To the extent that Mr. Cobble moves this Court for the assignment of a new judge, to initiate criminal charges, and to remand to state court a case this Court is not presiding over, his motions are without merit and are **DENIED**.

[2] On March 4, 2024, the Cobbles filed a "Notice of Default" and "Notice of Withdrawal from the March 14, 2024, Settlement Conference," asserting that they are entitled to default judgment under the 7th Amendment and asking Chief Judge Stivers to grant default judgment in their favor. [DE 53 at 380]. As this issue is not ripe, the Court does not address it.

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper, that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Century Prod., Inc. v. Sutter*, 837 F.2d 247, 249–50 (6th Cir. 1988)

Simply put, when a party signs a filing, they are representing to the Court that they have read the filing and that there is a proper basis for filing it. Mrs. Cobble's disclaimer that she "do[es] not understand the herein pleadings," [DE 35 at 319], suggests just the opposite; Rufina asserts she does not understand what she is representing to the Court. Adding such a disclaimer to a party's signature is, in effect, no different than leaving the filing unsigned.[3]

Rule 11 requires unrepresented parties to sign every filing—if they do not, "[t]he court *must strike* an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a) (emphasis added). As outlined above, the Court has warned the Cobbles three times to correct the unsigned filings, and they have declined

---

[3] The Cobbles' own argument in response to the Court's first order for signature pages supports the conclusion that Mrs. Cobble's disclaimed signature is not the certification that Rule 11 requires. The Cobbles argued that "the Court cannot compel Mrs. Cobble to sign the pleadings of [Mr.] Cobble. To do so means she must take responsibility for the contents of [Mr.] Cobble's pleading(s) of which she may not qualify." [DE 33 at 306]. Moreover, Mrs. Cobble has signed several filings without adding a disclaimer, including the notices of objections the Cobbles filed with the disclaimed signature pages. [*See* DE 35; DE 50; *see also* DE 8 (Response to Motion to Compel Arbitration); DE 26 ('Notice of Withdrawal'); DE 41 (Response to Motion for Pretrial Conference). This further illustrates that Mrs. Cobble understands the effect of her signature on a filing and is, practically speaking, declining to sign the four filings at issue.

to do so.[4] As a result, the Court **STRIKES** the "Motion to Return Case to State Court" and the "Motion for the Court to Report § 1332 Error to Congress" [DN 9; DN 10]; the reply [DN 16] to the foregoing motions; the "Amended Motion for the Court to Report to Congress the Unconstitutionality of All Removal Statutes" [DN 17]; and the surreply to T-Mobile's Motion to Compel Arbitration. [DN 16].

2. **Sprint's Motion to Compel Arbitration**

Congress enacted the United States Arbitration Act of 1925 ("FAA"), 9 U.S.C. §§ 1–16, and federal and Kentucky law favors enforcing arbitration agreements. *See Whalen v. Lord & Moses, LLC*, Case No. 09-CV-0192-JBC, 2009 WL 3766327, at *1 (E.D. Ky. Nov. 10, 2009). The FAA's purpose was to put arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA applies to written agreements to arbitrate disputes, so long as those agreements arise out of contracts involving transactions in interstate commerce. Under its terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA provides that a party may petition a court to compel arbitration. FAA § 4. Upon such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance

---

[4] The Court has twice rejected Mr. Cobble's argument that he may sign the filings as Mrs. Cobble's representative, noting that as the Cobbles are *pro se* litigants, Mr. Cobble "cannot represent [Mrs. Cobble's] interests or sign filings on her behalf." [DE 30 at 297; DE 34 at 316]; *see Bright Horizons Properties v. Simpson*, No. 111CV02458SCJAJB, 2011 WL 13319203, at *2 (N.D. Ga. Aug. 8, 2011), *report and recommendation adopted*, No. 1:11-CV-2458-SCJ, 2011 WL 13319429 (N.D. Ga. Aug. 26, 2011) (citing *Hui Yu v. U.S. Dep't of Homeland Security*, 568 F. Supp. 2d 231, 234 (D. Conn. 2008) ("28 U.S.C. § 1654 precludes a nonattorney from representing another . . . [t]herefore, plaintiff cannot serve as his wife's legal representative[.]")).

with the terms of the agreement." *Id*. Yet "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id*. Thus, the Court first "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003)).

In determining whether the dispute is arbitrable, the Court first looks to whether the parties formed a valid arbitration agreement. *See Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 725 (W.D. Ky. 2014) ("Such review, the Sixth Circuit advises, requires the Court to determine first whether a valid agreement to arbitrate exists between the parties, and second whether the specific dispute falls within the substantive scope of the agreement.") (internal citations and quotations omitted). "Motions to compel arbitration are evaluated under the summary judgment standard set forth in Fed. R. Civ. P. 56(c)." *Nu-X Ventures v. SBL, LLC*, 568 F. Supp. 3d 829, 833 (W.D. Ky. 2021) (citing *Atkins v. CGI Tech. & Sols., Inc.*, 339 F. Supp. 3d 619, 628 (E.D. Ky. 2018)). A party opposing arbitration must show a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Id*. (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Additionally, "the party opposing arbitration 'has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable.'" *Id*. (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

Kentucky law "provides for a burden-shifting framework: the party seeking arbitration satisfies its prima facie burden by simply providing a copy of the written and signed arbitration agreement, then the burden shifts to the opposing party to show a lack of an agreement." *Atkins,* 339 F. Supp. 3d 619 at 628 (citing *MHC Kenworth–Knoxville/Nashville v. M & H Trucking, Inc.*,

6

392 S.W.3d 903, 906 (Ky. 2013)). Sprint has produced its written Terms and Conditions, containing the Arbitration Provision, signed by Mrs. Cobble. [DE 1-1 at 96-123; *Id*. at 80].

The Cobbles argue the Arbitration Provision is not binding for four reasons: (1) the Arbitration Provision is invalid and unenforceable; (2) The Cobble's claims are based on alleged conduct that occurred after Mrs. Cobble terminated her contract with Sprint; (3) Mr. Cobble is not bound by the Arbitration Provision because he did not sign it; and (4) Defendant Chase Bank ("Chase") and Sprint are "inseparable for determining the facts and thus must be prosecuted together." [DE 8 at 154-55].

     *i.*  *Validity and Enforceability of the Arbitration Provision*

The Cobbles do not dispute that Mrs. Cobble agreed to arbitration when she signed her Subscriber Agreement with Sprint. While not explicitly stated, the Cobbles argue that the Arbitration Provision is procedurally unconscionable because it does not allow parties to opt out of arbitration, [DE 8 at 155] and substantively unconscionable because it limits the right to pursue claims in Court. [*Id*. at 156-57].[5]

Under Kentucky law, an arbitration clause may be held unenforceable if it is procedurally or substantively unconscionable. *Schnuerle v. Insight Commc'ns Co., L.P.,* 376 S.W.3d 561, 575 (Ky. 2012). Procedural unconscionability

---

[5] In the same paragraph, the Cobbles also argue that the Federal Arbitration Act is an "improper, unconstitutional law," for the same reasons. [DE 8 at 155]. Courts have consistently rejected the argument that the FAA is unconstitutional because it (with certain exceptions) makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 405, 87 S. Ct. 1801, 1806–07, 18 L. Ed. 2d 1270 (1967) ("It is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.'" (quoting H.R.Rep.No.96, 68th Cong., 1st Sess., 1 (1924); S.Rep.No.536, 68th Cong., 1st Sess., 3 (1924)); *see also Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 514 (W.D. Ky. 2016) ("Since Congress passed the FAA over 90 years ago, the United States Supreme Court has enforced and upheld the FAA as constitutional.").

> pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . . It involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear in the boilerplate of a printed form.

*Baquie v. E. Energy Corp.,* No. 1:09-CV-00121-TBR, 2010 WL 1416557, at *4 (W.D. Ky. Apr. 2, 2010) (citing *Conseco Fin. Servicing Corp. v. Wilder,* 47 S.W.3d 335, 343 n. 22 (Ky.App.2001) (citations and quotations omitted)).

Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (citations and quotations omitted). Courts consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Schnuerle,* 376 S.W.3d 561 at 577 (citing *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 876 (11th Cir. 2005)).

The Arbitration Provision in Sprint's Subscriber Agreement provides:

> **Mandatory Arbitration And Waiver of Class Action**[.] **Instead of suing in court, you and Sprint agree to arbitrate all Disputes (as defined below) on an individual, non-representative, basis. You agree that by entering into this Agreement, you and Sprint are waiving the right to a trial by jury or to participate in a class action or representative action. This agreement to arbitrate is intended to be broadly interpreted.**

[DE 1-1 at 117] (emphasis in original).

The Cobbles argue that the Arbitration Provision is procedurally unconscionable because "it is 'plain as the day' that AA's (arbitration agreements) must give the party the option of refusing the AA while retaining the agreement." [DE 8 at 155]. Like the plaintiffs in *Schnuerle*, the Cobbles argue the Arbitration Provision is contained "in a non-negotiable, take it or leave it, adhesion contract." *Schnuerle,* 376 S.W.3d 561 at 576. Yet that does not, by itself, render an arbitration provision unconscionable. Instead, "[i]t is fundamental that the prominence of the disclosure

8

should be commensurate with the importance of the right being taken away." *Id*. Just as the arbitration provision in *Schnuerle,* the Arbitration Provision here "was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it . . . the provision is in clear and concise language. The title is in bold print." *Id*. at 576-77. As a result, the Arbitration Provision is not procedurally unconscionable.

The Cobbles also argue that the Arbitration Provision is substantively unconscionable because it limits Sprint's liability for damages—in particular, the Cobbles contend that the Arbitration Provision bars punitive damages. [DE 8 at 158]. To begin, the limited liability clause is not contained in the Arbitration Provision; "the arbitration clause and the limitation of liability are distinct and separately operative parts of the contract." *Francis v. Cute Suzie, LLC,* No. 3:10-CV-00704, 2011 WL 2174348, at *3 (W.D. Ky. June 2, 2011); [*see* DE 1-1 at 116; *Id*. at 117]. The Subscriber Agreement also contains a severability clause, which provides that "[e]xcept as the Agreement specifically provides otherwise, if any part of the Agreement is held invalid or unenforceable, the rest of this Agreement remains in full force and effect." [DE 1-1 at 122]. Where an Arbitration Provision does not expressly bar an arbitrator from severing or modifying the terms of the contract, courts routinely uphold the arbitration provision as valid and enforceable. *See, e.g., Green v. Frazier*, 655 S.W.3d 340, 349 (Ky. 2022) ("We might, were we so inclined, write more on the various claims and issues presented, *e.g.*, limitation of damages . . . [t]hose issues, however, are more properly decided by the arbitrator."); *see also Francis*, 2011 WL 2174348, at *4 (W.D. Ky. June 2, 2011) ("If upon submission of this matter to arbitration, the arbitrator determines that the limitation of damages provision in the LHRA is unconscionable or otherwise unenforceable, he would have the power to disregard it pursuant to the LHRA's severability clause. Thus,

9

(plaintiff's) argument for substantive unconscionability is unconvincing."). The Arbitration Provision in this case is not unreasonably or grossly favorable to one side—it is "a basic arbitration clause permitting either side to compel arbitration. It has no unique characteristics to distinguish it from any other standard arbitration clause." *Schnuerle,* 376 S.W.3d 561 at 577. Accordingly, the Arbitration Provision is not substantively unconscionable.

Because the Arbitration Provision is neither substantively nor procedurally unconscionable, it is valid and enforceable under Kentucky law.

### ii. *Scope of the Arbitration Provision*

The Cobbles also argue that the Arbitration Provision is not binding because their claims are based on "Sprint and Chase Bank debit[ing] the Cobbles' bank account **after** the Sprint account/service agreement was terminated," [DE 8 at 155], and the Arbitration Provision "cannot include Mr. Cobble" because he did not sign it. [*Id*. at 154].

#### a. Scope of Claims Covered by the Arbitration Provision

The Arbitration Provision specifically covers claims that "arise[] after Services have terminated." [DE 1-1 at 118].[6] Even if it did not include that language, the Sixth Circuit has observed that "when a contract requires arbitration of 'all employment-related disputes . . . which . . . arise between [the parties],' the use of present- and future-tense language led us to conclude that 'the parties signed this agreement to head off future lawsuits, not to cut off existing ones.'" *Solo v. United Parcel Serv. Co.,* 947 F.3d 968, 973 (6th Cir. 2020) (quoting *Russell v. Citigroup,*

---

[6] The Arbitration Provision provides in relevant part that "[d]isputes" include, but are not limited to, any claims or controversies against each other in any way related to or arising out of our Services or the Agreement, including wireless coverage, Devices, billing services and practices, policies, contract practices (including enforceability), and service, privacy, or advertising claims, even if the claim arises after Services have terminated." [DE 1-1 at 118]

*Inc.*, 748 F.3d 677, 679–80 (6th Cir. 2014) *abrogated in part on other grounds by Morgan v. Sundance, Inc.,* 596 U.S. 411, 411, 142 S. Ct. 1708, 1709, 212 L. Ed. 2d 753 (2022). When parties are required to "arbitrate 'any dispute or claim arising from or in connection with this agreement *or the services provided* by [the plaintiff],' the natural reading is that "the language covers more than claims arising 'out of the agreement' and so applies outside the agreement's timeframe." *Id*. (citing *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (quoting the contract at issue) (emphasis in original). Moreover, "all doubts concerning the scope of arbitrability should be resolved in favor of arbitration." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 783 v. Dean Foods Co.*, 968 F.2d 1215 (6th Cir. 1992) (citing *McGinnis v. E.F. Hutton & Co.,* 812 F.2d 1011, 1013 (6th Cir.)). As a result, the Arbitration Provision covers claims arising out of Sprint's alleged actions after the agreement was terminated.

      b.  <u>Scope of Parties Covered by the Arbitration Provision</u>

Similarly, the Cobbles also argue that Mr. Cobbles claims are "not under [the] jurisdiction of Sprint's AA," because Mr. Cobble did not sign the agreement. [DE 8 at 156]. Sprint argues that because Mr. Cobble's claims "rest entirely on Mrs. Cobble's Subscriber Agreement with Sprint and are indistinguishable from Mrs. Cobble's," he is bound under the doctrine of equitable estoppel. [DE 1-1 at 61].

As a threshold matter, although the Cobbles style their claims against Sprint and Chase as claims for "premeditated, felony offenses" of "conspiracy to commit fraud, banking fraud, and aggravated harassment" [DE 8 at 157], the substance of their allegations are for breach of contract. In the Amended Complaint, the Cobbles allege Mrs. Cobble was a Sprint customer. [DE 1-1 at 20 ¶A-1]. The Cobbles allege that while Mrs. Cobble submitted four "valid payments" to Sprint for

11

her cell phone service, [DE 1-1 at 25 ¶B-11], Sprint debited five other payments "without authorization." [DE 1-1 at 20 ¶A-2]. In other words, the Cobbles allege that Mrs. Cobble agreed to be charged for Sprint's cell phone service, but when Sprint allegedly charged the Cobbles bank account "without authorization," it went beyond what Sprint and Mrs. Cobble agreed to—it breached the contract.

"Courts must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)). "Five theories for binding non-signatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *A&M Healthcare Invs. LLC v. Gill*, No. 2022-CA-1539-MR, 2023 WL 6932611, at *2 (Ky. Ct. App. Oct. 20, 2023) (citing *Landmark of Iroquois Park Rehab. & Nursing Ctr., LLC v. Gill*, No. 2020-CA-1362-MR, 2022 WL 2182676, at *8 (Ky. Ct. App. June 17, 2022).

In *Landmark*, the court found equitable estoppel inapplicable for a non-signatory plaintiff because he was "not attempting to enforce the Arbitration Agreement, nor any contract, against the non-signatory defendants; each of his claims sounds in tort, not in contract." 2022 WL 2182676, at *9. In contrast, the Amended Complaint does not distinguish between Mr. and Mrs. Cobble's claims, which specifically arise from Sprint's alleged breach of Mrs. Cobble's contract. [*See* DE 1-1 at 19-28]. Mr. Cobble "cannot, on the one hand, seek the benefit of those alleged contracts . . . and, on the other hand, disavow the arbitration provision that is part of those alleged contracts." *Palazzo v. Fifth Third Bank*, No. 2011-CA-000034-MR, 2012 WL 3552633, at *2 (Ky. Ct. App. Aug. 17, 2012); *see Hagan v. GreenPoint Credit Corp.*, No. 07-17-KKC, 2007 U.S. Dist. LEXIS 56976, at *19 (E.D. Ky. Aug. 3, 2007) ("Plaintiffs could not maintain the claims above

without reference to the insurance provisions in the agreements. The Court has determined that all claims arising out of the agreements are subject to arbitration, thus, all Plaintiffs claims must be submitted to arbitration."). As a result, Mr. Cobble is bound by the Arbitration Provision under the doctrine of equitable estoppel.

### iii. Non-Arbitrable claims Against Chase

Finally, the Cobbles contend that they are not bound to the Arbitration Provision because "both defendant parties are co-conspirators to felony offenses," [DE 8 at 156], and the Arbitration Provision does not apply to Chase. [*Id*. at 157]. Yet, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Parkplace Homes, LLC v. Gayhart*, No. 2022-CA-1415-MR, 2023 WL 5653732, at *5 (Ky. Ct. App. Sept. 1, 2023) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S. Ct. 927, 939 (1983)). The FAA "has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *Id.* (citing *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 132 S. Ct. 23, 24, 181 L. Ed. 323 (2011) (citation omitted)). A court "may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *KPMG LLP*, 565 U.S. 18 at 19. So too here. The Arbitration Provision applies to the Cobbles' claims against Sprint even though they have non-arbitrable claims against Chase.

Because the Arbitration Provision is valid and enforceable under Kentucky law, Mr. and Mrs. Cobble's claims against Sprint are covered by the Arbitration Provision, and the non-arbitrable claims against Chase do not bar arbitration of the claims against Sprint, the Court **GRANTS** Sprint's motion to compel arbitration.

13

Accordingly, the Court must decide whether to stay or dismiss the case. The FAA instructs that a court should stay the proceedings if three conditions are met: "First, the issue must be arbitrable. Second, one of the parties must apply for a stay. Third, the party requesting the stay cannot be in default in proceeding with the arbitration." *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017); *see* 9 U.S.C. § 3.

First, as outlined above, the Court finds that the claims against Sprint are arbitrable. Second, Sprint asks the Court to "dismiss Sprint from this action or, alternatively, stay this case in favor of arbitration." [DE 1-1 at 65; DE 11 at 189]. As to the third requirement, "[t]he FAA does not define what constitutes a 'default in proceeding with such arbitration,' and the Sixth Circuit has never specifically construed this language from § 3." *In re AME Church Emp. Ret. Fund Litig.*, No. 122MD03035STAJAY, 2023 WL 8586341, at *13 (W.D. Tenn. Dec. 11, 2023). Yet the Sixth Circuit has "implicitly treated the 'default 'element of § 3 as a party's waiver of its contractual right to arbitration, usually by its delay in seeking the enforcement of an arbitration agreement." *Id*. (citing *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338–39, n.2 (6th Cir. 2010) (abrogated in part on other grounds by *Morgan*, 596 U.S. 411). Moreover, "every other Circuit to have addressed" the meaning of default under the FAA has interpreted it as waiving the right to arbitrate. *Id*. (collecting cases).[7]

---

[7] *Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 83 F.4th 1113, 1117 (8th Cir. 2023) ("When addressing whether the applicant defaulted, we determine whether the applicant waived its contractual right to arbitrate."); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc*., 683 F.3d 577, 586 (4th Cir. 2012) ("Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default."); *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 921 (D.C. Cir. 2011*); Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 218 (3d Cir. 2007); *Marie v. Allied Home Mortgage Corp*., 402 F.3d 1, 13 (1st Cir. 2005); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995); *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416, 420 (5th Cir. 1985);*Morgan*, 596 U.S. 411 at 416–17 ("The Courts of Appeals, including the Eighth Circuit, have generally resolved cases like this one as a matter of federal law, using the terminology of waiver. For today, we assume without deciding they are right to do so.").

The Sixth Circuit has used a two-part test to determine waiver: whether a party took actions "completely inconsistent with any reliance on an arbitration agreement," and whether a party delays asserting the right to arbitrate "to such an extent that the opposing party incurs actually prejudice." *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *Germany v. River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir. 1973)). However, the Supreme Court recently directed the Eighth Circuit to remove its prejudice requirement from a similar wavier test, ruling that a court "cannot condition a wavier of the right to arbitrate on a showing of prejudice." *Morgan,* 596 U.S. 411 at 419. The Supreme Court applied "the usual federal rule of waiver," instructing the Eighth Circuit to consider if a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id*. Although the Sixth Circuit has not addressed its waiver test post-*Morgan*, another court in our district found *Morgan's* position that "the FAA's 'policy favoring arbitration' does not permit courts to invent special, arbitration-preferring procedural rules" abrogated the Sixth Circuit's test. *Lee Constr., LLC v. Bratton,* No. 1:22-CV-196, 2023 WL 5805848, at *4 (E.D. Tenn. July 28, 2023). As a result, the court interpreted *Morgan* to require courts to treat an arbitration provision "like any other contract provision, applying a general waiver analysis under [state] law." *Id*. This Court agrees.

Under Kentucky law, a waiver is a "voluntary and intentional surrender of a known right[.]" *Sylvester v. Safeco Ins. Co. of Am.*, No. 422CV00140GNSHBB, 2024 WL 457163, at *7 (W.D. Ky. Feb. 6, 2024) (citing *Temple v. Temple*, 298 S.W.3d 466, 469 (Ky. App. 2009)). "[Waiver] may be express, or it may be implied from the conduct of a party." *Id*. (citing *Clift v. RDP Co.*, 200 F. Supp. 3d 660, 672 (W.D. Ky. 2016); *Bates v. Grain Dealers Nat'l Mut. Fire Ins. Co.,* 283 S.W.2d 3, 5 (Ky. 1955)). The Cobbles filed their Complaint on March 4, 2021, [DE 1-1 at 16] and filed an Amended Complaint on April 1, 2021. [*Id*. at 19]. Sprint moved to compel

arbitration on April 14, 2021. [*Id*. at 46]. The Cobbles do not argue that Sprint waived the right to arbitrate, nor does Sprint's conduct imply such a waiver. Accordingly, the FAA's three requirements for staying proceedings are met. The Court will grant a partial stay of the proceedings; the Cobble's claims against Sprint are stayed pending arbitration, their claims against Chase are not. *See LeafGuard of Kentuckiana, Inc. v. LeafGuard of Kentucky, LLC*, No. CV 5: 15-237-DCR, 2016 WL 3079792, at *5 (E.D. Ky. May 31, 2016) (in granting a stay, "district courts have discretion to decide whether non-arbitrable claims should be stayed pending resolution of arbitrable claims.") (citing *Moses*, 460 U.S. 1, at 20 n. 23).

### III. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Mr. Cobble's individual motions: the "Motion to Return Case to State Court," [DE 9], the "Motion for the Court to Report § 1332 Error to Congress," [DN 10], the reply to the foregoing motions and surreply to Sprint's Motion to Compel Arbitration, [DN 16], and the "Amended Motion for the Court to Report to Congress the Unconstitutionality of All Removal Statutes," [DN 17], are **STRICKEN**.

(2) To the extent that Mr. Cobble moves this Court for the assignment of a new judge, to initiate criminal charges, and to remand to state court a case this Court is not presiding over, [DE 42], his motions are **DENIED**.

(3) Sprint's Motion to Compel Arbitration [DE 1-1] is **GRANTED.**

(4) The Cobble's claims against Sprint are **STAYED** pending the outcome of arbitration.

cc: Counsel of record, Plaintiffs Daniel Cobble and Rufina Cobble, *pro se*