UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANIEL COBBLE, ET AL.                                          Plaintiffs

v.                                          Civil Action No. 3:21-cv-000415-RGJ-RSE

T-MOBILE SPRINT, AND JPMORGAN                                 Defendants
CHASE BANK, N.A.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Daniel Cobble ("Mr. Cobble") and Rufina Cobble ("Mrs. Cobble") (collectively, "the Cobbles"), move for default judgment against Defendant Sprint Solutions, Inc. ("Sprint")[1] and summary judgment against JPMorgan Chase Bank, N.A. ("Chase") [DE 65; DE 66 (Notice of Correction of Notice of Default)]. Chase responded [DE 68], at the request of the Court [DE 82], Sprint responded [DE 88], and the Cobbles replied to each response [DE 69; DE 89]. The Cobbles also filed an objection to the Court's order [DE 82] requesting a response from Sprint. [DE 86]. No responses were filed to the objection and the time for doing so has passed.

Chase moves for summary judgment against the Cobbles [DE 75]. The Cobbles responded [DE 77], Chase replied [DE 78], and the Cobbles filed a surreply[2] [DE 79]. In addition, the Cobbles moved to stay discovery pending the Court's ruling on their summary judgment motion [DE 67], which the Magistrate Judge denied on July 15, 2024 [DE 72]. The Cobbles filed an

---

[1] Mrs. Cobble contracted with Sprint Solutions, Inc. for cellular services and is the entity that compelled arbitration. As clarified in Sprint's response, Sprint Solutions, Inc. is a subsidiary of T-Mobile US, Inc. subsequent to Sprint Corporation's merger with T-Mobile US, Inc. in April 2020. As a result, the Court interprets all the Cobbles' various references to "T-Mobile," "T-Mobile Sprint," and "Metro by T-Mobile" to mean Sprint Solutions, Inc. as it relates to this dispute. [DE 88 at 698].

[2] Surreplies are not permitted by the local rules; however, because the surreply adds no new arguments and is not prejudicial, it will remain in the record.

objection to the Magistrate Judge's July 15, 2024 Order [DE 73].  No response was filed and the time for doing so has passed.

Finally, the Cobbles filed an objection [DE 85] to the Court's March 12, 2025 Order [DE 81] denying the Cobbles' request for recusal of the undersigned.  No response was filed and the time for doing so has passed.

For the reasons below, the Cobbles' Motion for Default Judgment and Summary Judgment [DE 65; DE 66], Objection to the Magistrate Judge's July 15, 2024 Order [DE 73], Objection to the Court's March 12, 2025 Order regarding recusal [DE 85], and Objection to the Court's March 21, 2025 order regarding Sprint's response to the Notice of Default [DE 86] are **DENIED** and Chase's Motion for Summary Judgment [DE 75] is **GRANTED**.

## I.    PROCEDURAL BACKGROUND

The Cobbles[3] are husband and wife, proceeding pro se, and originally filed a complaint against Sprint in Franklin County state court. [DE 1-1 at 2-11]. Plaintiffs allege that Sprint double charged them and made unauthorized debits from their Chase bank account. [*Id.*]. On April 1, 2021, the Cobbles filed an amended complaint adding Chase as a Defendant and alleging that Chase acted "as a co-conspirator to banking fraud for giving Sprint access to the Cobbles' bank account." [*Id.* at 15-37]. On April 30, 2021, Sprint moved to compel arbitration of the Cobbles' claims against Sprint. [DE 1-1 at 40-121]. Also, on April 30, 2021, Chase filed a notice of removal [DE 1] of the state-court action to the United States District Court for the Eastern District of

---

[3] The Cobbles have filed numerous cases in this District and other surrounding courts, including more than twenty civil actions in the Western District since 2001.  *See, e.g., Cobble v. Value City Furniture*, Civil Action No. 3:06-CV-00229-S, 2006 WL 1687963, at *1 (W.D. Ky. June 19, 2006) (alleging $1,111.93 for defective furniture and $3,725,000 for emotional and punitive damages); *Cobble v. U.S.*, No. 09-379C, 2009 WL 2610532, at *4 (Fed. Cl. Aug. 24, 2009) (alleging $552 million in damages against the U.S. government for breach of contract claim); *Cobble v. Bennett*, Civil Action No. 3:21-CV00021-RGJ, 2021 WL 3713533, at * 7 (W.D. Ky. Aug. 20, 2021) (sanctioning Mr. Cobble for "vexatious" litigation).

Kentucky, Central Division at Frankfort ("Eastern District"). By Order entered June 24, 2021, the Eastern District transferred the case to this Court [DE 22] and Chase timely answered [DE 27].

Ultimately, on March 22, 2023, this Court granted Sprint's motion to compel arbitration and stayed the Cobble's claims against Sprint pending the outcome of arbitration. [DE 57 at 402]. Since that time, in accordance with the Court's order, Sprint has not participated in the litigation. In addition, the Court has received no information regarding the arbitration or whether the continuing stay is necessary. As a result, and considering the Cobbles' notice of default against Sprint, on March 21, 2025, the Court ordered Sprint to file a status report advising the Court "as to whether arbitration was initiated, and if so, the status of arbitration" and to respond to Plaintiffs' Notice of Default. [DE 82 at 658]. The Cobbles' filed an Objection to the Court's March 21, 2025 Order alleging that Sprint has "admitted guilt" by failing to dispute or respond to the "Notice of Default," and therefore, the Court must accept the "Notice of Default as final," rule in the Cobbles' favor and grant damages of over $12 million as requested in the Amended Complaint. [DE 86 at 692]. The Cobbles further allege that the "trial judge is again attempting to sabotage case." [*Id* at 693 (capitalization removed)].

In accordance with the March 21, 2025 Order, Sprint responded stating that (1) "Plaintiffs' failure to comply with the Dispute Resolution and Arbitration procedures set forth in Mrs. Cobble's agreement with Sprint are procedural matters that fall outside this Court's jurisdiction after it granted Sprint's motion to compel arbitration;" (2) "even if the Court considered Plaintiffs' arguments, it should nevertheless conclude that Plaintiffs failed to comply with the Notice of Dispute provision in Mrs. Cobble's agreement with Sprint" and (3) "Plaintiffs come nowhere close to meeting their burden to demonstrate that the Court should enter default." [DE 88 at 699, 700-03]. The Cobbles replied, repeating earlier arguments, and asserting that it was impossible to file

their dispute with Sprint because of the merger with T-Mobile and alleging that Sprint's counsel should have accepted the Cobbles' arbitration documents.  [DE 89 at 706-07].

While there have been numerous motions and objections filed over the course of this case, they are largely omitted from this background because they have no direct bearing on the motions before the Court.  The Court does note that Chase alleges that the Cobbles refused to serve their initial disclosures as mandated by the Court [DE 52 (staying initial disclosure deadline until March 21, 2024)] and have not sought discovery from any party or nonparty. After filing their motions for default and summary judgment, the Cobbles moved to stay discovery pending the outcome of their motions.  [DE 67].  This motion was denied by the Court and again no discovery has been sought by the Cobbles. [DE 73].

## II.    FACTUAL BACKGROUND

On December 10, 2016, Mrs. Cobble opened a personal checking account ending in 0535 (the "Account") subject to a Deposit Account Agreement ("DAA") with Chase. The DAA states:

> This agreement is the contract that governs your account.
>
> Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement.

[DE 75-1, Exh. 1 at 485]. Mrs. Cobble signed a signature card at the time she opened the Account and agreed to the terms of the DAA. [DE 75-2, Exh. 1 at 512].

Chase asserts that the DAA governs all aspects of the relationship between Mrs. Cobble and Chase related to the Account, "including how and when Mrs. Cobble, the Account owner, can file a lawsuit against Chase."  [DE 75 at 460]. The DAA requires that

> [i]f your statement shows electronic funds transfers that you did not make, tell us right away.  If you do not tell us within 60 days after the statement was sent or

4

> otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time.

[DE 75-1, Exh. 1 at 493]. As a result, Chase argues that "Mrs. Cobble must both notify Chase of a disputed transaction within sixty days of the error appearing on her Account statement and bring suit within two years of the claim accruing." [DE 75 at 460; DE 75-1, Exh. 1 at 493, 504]. The DAA also limits Mrs. Cobble's damages for any unauthorized item "to the face amount of the item." [DE 75-1, Exh. 1 at 501].

According to the documents provided by Chase, Mr. Cobble was not a joint owner of the Account. [DE 75-2, at 510, ¶ 7]. However, Mrs. Cobble added Mr. Cobble to the Account as Power of Attorney ("POA") and "granted him limited powers as defined by her nomination." [DE 75 at 460; DE 75-2, at 510, ¶ 6 and Exh. 3 at 545-46]. Mrs. and Mr. Cobble signed an updated Personal Signature Card, confirming Mr. Cobble as a "POA" on the Account. [*Id.* at ¶ 6 and Exh 4 at 549]. The powers conveyed by the POA are

> with respect to all of the accounts identified below: (1) execute and deliver any checks, drafts, withdrawals, or other instruments, or initiate any electronic instructions, for the payment of money from my accounts; (2) endorse any checks (except US Government), drafts, or other items payable to me, or to my order, and Bank is authorized to pay cash on any such items, or to accept them for deposit to any of my accounts without further inquiry or regard as to the use of said checks, or other items, or the proceeds thereof; (3) agree to a modification of the terms of any account; (4) receive bank statements, notices, similar documents, or other information regarding my accounts; and (5) request and agree to any additional services the agent believes appropriate relating to my accounts. If I have checked the appropriate box below, I authorize Agent to establish any account(s) in my name, for purposes of transacting my normal Bank business. For retirement plans the Agent is authorized to execute all provisions under the applicable retirement plan agreement that the participant can execute, including the designation and change of beneficiaries (including the power to name the Agent as beneficiary). This Power of Attorney does not authorize monetary transactions on Investment Accounts in any retirement plan.

[DE 75-2, at 510, ¶ 6 and Exh. 3 at 545-46].

5

The Cobbles appear to allege that in September 2020 Sprint began "debiting" the Account in connection with Mrs. Cobble's Sprint cellular service contract. [DE 1-1, at 6–9]. They allege that between September 8, 2020 and February 26, 2021 Sprint debited five "invalid" payments from Mrs. Cobble. [*Id.*]. The documents provided by the Cobbles with their Complaint and Amended Complaint provide the details for the debit history of Mrs. Cobble's Account.

Mrs. Cobble made monthly payments to Sprint pursuant to her mobile services contract. In September 2020, the debit history reflects one payment to Sprint for the standard monthly payment of $60.92 (9/8). [DE 1-1, at 33; DE 75-2, at Exh. 2 at 515]. In October 2020, the debit history reflects two payments to Sprint for the standard monthly payment of $60.92 (10/20 and 10/29). [DE 1-1, at 38; DE 75-2, at Exh. 2 at 520, 522]. For November 2020, there were also two payments to Sprint for $60.92 (11/20 and 11/30). [DE 1-1, at 38; DE 75-2, at Exh. 2 at 523, 526]. In December 2020, the debit history reflects one payment for $60.92 (12/30). [DE 1-1, at 38; DE 75-2, at Exh. 2 at 530]. The Cobbles allege that one of the October payments and one of the November payments were "invalid." Mrs. Cobble ended her Sprint service contract on January 21, 2021. [DE 1-1, at 20]. And the Cobbles then allege that Chase allowed Sprint to debit two additional unauthorized payments from the Account on January 29, 2021 and February 26, 2021 each for $60.92 after she ended her service contract with Sprint. [DE 1-1 at 20]. In total, the Cobbles allege $243.68 in "invalid" payments.

The billing records provided reflect, however, that Sprint sent Mrs. Cobble multiple adjustments and refunds totaling $278.23: $30.00 on December 1, 2020; $60.92 on December 3, 2021; $59.96 on January 6, 2021; $10.26 on January 20, 2021; and $117.09 on April 8, 2021. [DE 75-5, at 570, 572; DE 75-6; DE 75-7, at 595, 597]. The billing records also reflect that Sprint billed Mrs. Cobble the month after each service period. Thus, the billing period ending December

6

28 was billed in January.  As a result, Mrs. Cobble's last Sprint billing cycle, which ended in late January, would have been billed in February. [DE 75-7 (providing the February 2021 Sprint Account Bill showing no payment required due to a credit balance of $61.17)].

The Cobbles concede in the Amended Complaint that Chase credited the January 2021 payment to Mrs. Cobble. [DE 1-1, at 20]. The records also reflect that on February 26, 2021, Mr. Cobble contacted Chase and disputed the January 29, 2021 and February 26, 2021 charges on the Account. [*Id.* at 20–21; DE 75-8 at 602-03, ¶ 4 and Exh. 1 at 606]. Chase credited the January charge as confirmed by letter. [DE 75-8 at 602-03, ¶ 6]. As to the February 26, 2021 charge, Chase's representative was unable to locate that transaction when Mr. Cobble first contacted Chase on February 26, 2021, to dispute the charge. [DE 75-8 at 602-03, ¶ 5 (noting on February 26, 2021, "did not see payment in payment optimizer or admin tool")]. Sprint asserts that because the call was made the same day of the purported "invalid" payment to Sprint, it was not "available" to the representative because "transactions often do not post immediately." [DE 75 at 464; DE 75-8 at 602-03, ¶ 5].

On March 3, 2021, the Cobbles filed a pro se complaint in Franklin Circuit Court against Sprint, alleging that Sprint directed unauthorized debits from the Account. Then, on April 30, 2021, the Cobbles filed an Amended Complaint, adding Chase as an additional defendant. [DE 1-1 at 19–34]. In addition to asserting a claim for the "invalid" February payment, the Cobbles alleged that Chase unilaterally activated a recurring bill-pay feature in March 2021 without their permission.  [*Id.*] The Cobbles do not allege, and the Account statements confirm, that the Account was never debited to pay Sprint after February 2021. [DE 1-1 at 23; DE 75-2 at 513-43]. The Cobbles also allege that Chase conspired with Sprint to commit fraud and harass them.  They

demand compensatory damages against Chase totaling $2,900,000 and punitive damages totaling $16,550,000. [DE 1-1 at 20, 22, 26–27].

### III.    "NOTICE OF DEFAULT" AGAINST SPRINT [DE 65]

The Cobbles assert that Sprint has refused to accept the Cobbles' complaint for arbitration and therefore Sprint is in default. [DE 65 at 430].  The Cobbles then assert that such "default" is a "legal admission" that Sprint "illegally debt[ed] the accounts" and requests restitution in the amount of "$12,800,060.92." [*Id.*].  By affidavit, Mr. Cobble states that on April 10, 2024 he sent his "Dispute/Complaint to T-Mobile in Dallas, Texas" pursuant to the terms and conditions of his agreement with the Defendant. [DE 65-1 at 432].  He then states that after "12 days of the U.S. Postal Service (as USPS) not delivering the Dispute, I initiated a USPS formal inquiry."  [*Id.* (cleaned up)].  Mr. Cobble then notes that three days later the Dispute/Complaint was returned with a "false statement" stamped on it that it was "<u>NOT DELIVERABLE AS ADDRESSED</u>." [*Id.* (emphasis in original)].  He then emailed Sprint's counsel and asked her to "confirm receipt of the attached Dispute for prosecution in accordance with the T-Mobile Terms & Conditions, or FACE DEFAULT."  [*Id.* (emphasis in original)].

### A.    Standard

Rule 55 governs Plaintiff's motion for default judgment "[w]hen a party against whom a judgment of affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise . . ." Fed. R. Civ. Pro. 55(a). Where, as here, a case does not involve a sum certain, Rule 55 sets out a two-step process. First, the Clerk of Court must issue an entry of default under Rule 55(a). Second, upon entry of default, if the plaintiff's claim is not for a sum certain, he or she "must apply to the court for a default judgment" by filing a motion for a default judgment under Rule 55(b)(2).  Fed. R. Civ. P. 55(b)(1)-(2).  *I Love Juice Bar Franchising,*

*LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020).

After the Clerk's entry of default and the plaintiff's motion for default judgment, the Court considers whether a default judgment is proper. *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *2 (S.D. Ohio July 15, 2019). When doing so, the Court takes all factual allegations in the complaint as true. *In re Family Resorts of Am., Inc.*, 1992 WL 174539, at *4 (6th Cir. July 24, 1992). An entry of default, however, does not automatically entitle the plaintiff to a default judgment. *See F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068, at *3 (S.D. Ohio May 30, 2012). The plaintiff must still show that, when all factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted. *Said v. SBS Elecs., Inc.*, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (It "remains the plaintiff's burden to demonstrate that" the complaint's factual allegations, taken as true, "establish the defendant's liability."), *adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010).

When considering whether default judgment is proper, courts:

> [T]ake into account: (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).

Additionally, a default is not considered an admission of damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved."). To determine damages, the court may hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009);

*see also* Fed. R. Civ. P. 55(b)(2) (A district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj*, 331 F. App'x at 354 (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing").

### B.    Analysis

Several reasons compel denial of a default judgment against Sprint.  First, the Federal Arbitration Act ("FAA"), which sets forth procedures for enforcing arbitration agreements in federal court, specifies in Section 3 that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 473–74, 144 S. Ct. 1173, 1175, 218 L. Ed. 2d 494 (2024).  Here, as requested by Sprint [DE 1-1 at 64 ("Because Plaintiffs must arbitrate their claims asserted against Sprint, Section 3 requires at a minimum that this case be stayed, if not dismissed")], the Court specifically stayed the Cobbles' claims against Sprint pending outcome of arbitration.  [DE 57 at 402; *See Wilson v. Starbucks Corp*., 385 F. Supp. 3d 557, 565 (E.D. Ky. 2019)].  As a result, the Cobbles cannot continue to litigate against Sprint in this forum until they have arbitrated.

Second, even if permitted to litigate against Sprint, the Cobbles' "Notice" is procedurally defective as there is neither a clerk's entry of default as required by Rule 55(a), nor could there be as the case is stayed.  Sprint has not failed to plead or otherwise respond to the Cobbles' "Notice" as the Cobbles have been compelled to arbitrate and the matter stayed as to Sprint.

The Cobbles argue at length that Sprint, the USPS, the clerk's office, and others have conspired against them; however, the evidence in the record directly contradicts such assertions.

On March 22, 2024, this Court granted Sprint's motion to compel arbitration and ordered that the Cobbles must pursue their claims against Sprint in individual arbitration pursuant to Mrs. Cobble's Subscriber Agreement with Sprint and the General Terms and Conditions of Service ("Terms and Conditions"). [DE 57]. The Dispute Resolution and Arbitration provision in the Terms and Conditions detail the steps the Cobbles must follow to initiate an arbitration against Sprint. Those procedures are clear and certainly within the abilities of the pro se Plaintiffs here, as demonstrated by their ability to navigate the federal court filing system in this case and others.

Simply put, the Terms and Conditions provide that a Notice of Dispute "should be sent to General Counsel; Arbitration Office; 12502 Sunrise Valley Drive, Mailstop VARESA0202-2C682; Reston, Virginia 20191." [DE 1-1 at 119]. The Terms and Conditions also provide that if the parties to a dispute cannot reach an agreement "within forty-five (45) days of receipt of the Notice of Dispute," then the Cobbles have the option to commence an arbitration pursuant to "the JAMS Comprehensive Arbitration Rules & Procedures (the "JAMS Rules"), as modified by this agreement to arbitrate, including the rules about the filing, administration, discovery and arbitrator fees. The JAMS rules are available on its website at www.jamsadr.com." *Id.*

The Cobbles' assertions that they have initiated such a Dispute and it has been rejected or entities have conspired against them to prevent the arbitration are untrue. The attachment to their "Notice of Default" claiming to show the initiation of the Dispute reveals that the documents were not sent to the address required and were returned as undeliverable. [DE 65-3 at 435]. There is no question that they failed to follow the required procedures. The Cobbles also assert that they sent the same package and information to Sprint's counsel. [DE 65-2]. Again, this is not the proper procedure for initiating the Dispute. Further, the Cobbles have failed to show that they have followed any of the JAMS Rules to initiate arbitration. The procedures are clear, and the

11

Cobbles have been compelled to arbitrate. They have failed to follow those procedures and as a result, the Notice of Default is **DENIED**. The Cobbles are warned not to file any other pleadings or motions against Sprint until they have complied with the Court's Order compelling arbitration.

## IV.    COBBLES' MOTION FOR SUMMARY JUDGMENT AGAINST CHASE [DE 65].

The Cobbles, in a single paragraph, move for summary judgment against Chase based on what they term as "legal admissions" caused by Sprint's alleged "default." [DE 65 at 431]. The Cobbles assert that because Sprint failed to respond to their Dispute, the Court must enter a default, find for the Cobbles against Sprint and award damages. [*Id.*]. And then because of the findings against Sprint, the Cobbles assert that the Court must also find all their allegations against Chase to be true, and award over $19 million in damages. [*Id.*].

Simply put, the issue is moot. As there is no default by Sprint, there can be no "legal admissions" as alleged by the Cobbles. However, even if there was a default, the foundation of the Cobbles' argument is contrary to law. Courts have consistently found "that the default of one defendant does not constitute an admission by the nondefaulting defendant and does not relieve the complainant from having to establish a case against those defendants who do appear." 102 A.L.R. 5th 647 (Originally published in 2002); *see also* 10A Fed. Prac. & Proc. Civ. §2684 (4th ed). *Vale v. Bonnett*, 191 F.2d 334 (D.C. Cir. 1951), was a federal action to recover from a building lessee and a party repairing the lessee's building for personal injuries sustained when a pedestrian was struck by a falling extension ladder while walking on a public sidewalk. The court held that where a default judgment was obtained against the repairman without consent by the lessee, the judgment would not foreclose the right of the lessee to contest the issue as to whether the repairman had been negligent in placing the ladder against the building or leaving it unattended. The same is true here, Chase would be entitled to contest the facts set forth by the Cobbles regardless of

whether a default existed as to another party.  As a result, summary judgement is **DENIED** against Chase.

## V.    COBBLES' OBJECTION TO THE TRIAL JUDGE'S MARCH 21, 2025 ORDER ALLOWING SPRINT TO RESPOND TO THE NOTICE OF DEFAULT. [DE 86].

The Cobbles object to permitting Sprint an opportunity to respond to their Notice of Default and updating the Court on the status of arbitration.  [DE 86].  The first section alleges that the undersigned "commits criminal fraud" by administratively remanding the motions for summary judgment and "Notice of Default" to allow Sprint to respond.  [*Id.* at 693].  The second section discusses: (1) the undersigned "motives for illegal actions;" (2) asserts that the default is "so 'adequately final' that the plaintiff\secured party may issue a invoice and lien for demanding payment of the claim and any other restitution for damages, universally recognized by the Uniform Commercial Code;" and  (3) asserts that the "Founding Fathers instructed common law under the 7th Amendment to quickly resolve lawsuits, since they knew that corrupt judges, such as the Louisville court, would set-up and seek ways to deny restitution to average Americans such as the Cobbles." [*Id.* at 693].  Section three discusses the timing of addressing the dispositive motions so close to trial and notes that it is "incredulous that Judge Jennings has not ruled on them to pave the way for trial."  [*Id.* at 694].  The last section reiterates the Cobbles' argument that the "Default" against Sprint creates "legal admissions" entitling the Cobbles to summary judgment against Chase and requires the denial of Chase's motion for summary judgment.  [*Id.*].

### A.    Standard

As an initial matter, the Cobbles' style their pleading as an "Objection." While a party may object to a magistrate judge's non-dispositive order within fourteen days, 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a), there is no such permission to objection to an order issued

by an Article III District Judge.  The March 21, 2025 Order was issued by the trial court and is therefore not subject to review by "objection."

However, the Sixth Circuit has held "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment" under Federal Rule of Civil Procedure 54(b). *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008); *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 Fed. App'x 949, 959 (6th Cir. 2004).  "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States,* 320 U.S. 1, 47-48, (1943)); *see also*, *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 118 Fed. App'x 942, 945 (6th Cir. 2004); *Clark v. Traughber*, 2006 WL 962602, at *1 (W.D. Tenn. Apr. 11, 2006)

Rule 54(b) states, in relevant part:

[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

Generally, reconsideration of an interlocutory order is appropriate "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez,* 89 F. App'x. at 959; *Smith v. CoreCivic, Inc.,* 618 F. Supp. 3d 695, 699 (M.D. Tenn. 2022); *Ass'n of Am. Railroads v. Hatfield*, 435 F. Supp. 3d 769, 774 (E.D. Ky. 2020); *Simmerman v. Ace Bayou Corp.,* 304 F.R.D. 516, 518 (E.D. Ky. 2015). "The moving party bears the burden of showing that reconsideration under Rule 54(b) is warranted, and that some harm or injustice would result if reconsideration were denied." *Adkisson v. Jacobs Eng'g Group, Inc.*, 527 F. Supp. 3d 961, 970 (E.D. Tenn. 2021), *aff'd on other grounds*, 35 F.4th 421 (6th Cir. 2022).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, No. 3:04-CV-20, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). Because there is an interest in the finality of a decision, motions for reconsideration "are extraordinary and sparingly granted." *Marshall v. Johnson*, No. CIV.A.3:07-CV-171-H, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

As the March 21, 2025 Order was issued by the district court, the Cobbles' "objection" shall be interpreted as a request for reconsideration of an interlocutory order under Rule 54(b).

## B.    Analysis

The Cobbles' objections do not set forth any intervening change of controlling law or new evidence.  Presumably, the objection attempts to assert "a clear error" or "prevent manifest injustice," although most of the assertions simply rehash prior arguments and are inappropriate for a motion to reconsider. *Rodriguez*, 89 Fed. App'x at 959; *White*, 2008 WL 782565, at *1.  As set forth above, the "Notice of Default" was not a final finding of liability and damages as asserted by the Cobbles and as a result, there was no clear error or manifest injustice in permitting Sprint, against whom all claims were stayed pending arbitration, to update the court on the status of arbitration prior to entertaining the Cobbles' motions.  As a result, there is no criminal fraud or denial of civil rights.  Moreover, the Court has addressed any concerns regarding the timing of the disposition of the Cobbles' motions and preparation for trial by remanding the deadlines

considering the Court's need for this information.  The Cobbles' request for reconsideration [DE 86] is therefore **DENIED**.

## VI.    COBBLES' OBJECTION TO MARCH 12, 2015 ORDER DENYING RECUSAL [DE 85].

The Cobbles filed "Objections" to the Court's March 12, 2025 Order denying recusal.  For the same reasons set forth in the preceding section, the Court will treat the Cobbles' objections as a motion to reconsider the interlocutory order under Rule 54(b).  *See supra* at 13–16.  The Cobbles have objected, asserting again that the "Notice of Default" requires this Court to "admit the facts in [their] December 11, 2023 Affidavit" and that the undersigned must recuse because in not responding to the Cobbles' affidavits the undersigned has "admit[ed] to the criminal acts of violating the civil rights of the Cobbles."  [DE 85 at 665-66].  The Cobbles further argue that the undersigned did engage in "extrajudicial acts" for which recusal is required, specifically, refusing to process a lien in case number 3:21-cv-21 and "instructing the clerks not to serve its August 20, 2021 dismissal/disposal order on Mr. Cobble, so that Mr. Cobble would not have the opportunity to challenge Judge Jenning's [sic] disposal order that is illegal."  [*Id.* at 666].  Finally, the Cobbles attach an alleged "Criminal Complaint" that they assert was served on the undersigned and other Officers of the Court as well as a "Notice of Default of Tort Claim" served on the Department of Treasury demanding that the undersigned pay "damages" to the Cobbles in the amount of $100,000.00. [*Id.* at 669].

In sum, the objection merely reiterates and rehashes the prior arguments addressed in the Cobbles' original motion and threatens retaliation against the Court for prior rulings.  Generally, recusal is not required because a party is dissatisfied with a court's ruling. "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

16

*United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Vintilla v. Safeco Ins. Co*., No. 1:05CV666, 2005 WL 1657056 (N.D. Ohio 2005); *Youn v. Track, Inc*., 324 F.3d 409, 423 (6th Cir. 2003). Essentially, "[t]he alleged facts . . . must relate to 'extrajudicial conduct rather than . . . judicial conduct.'" *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 681 (6th Cir. 2007) (quoting *Story*, 716 F.2d at 1091); *see also Massey v. Specialized Loan Servicing, LLC*, No. 2023 WL 6096953, at *4 (W.D. Ky. Sept. 18, 2023). Here, all the issues underlying the Cobbles' request for recusal relate to the undersigned rulings and alleged treatment of the Cobbles in cases before the court or matters learned about through participation as the judge in many of the Cobbles' cases. As a result, the Cobbles request to reconsider its March 12, 2025 Order is **DENIED**.

## VII.   CHASES' MOTION FOR SUMMARY JUDGMENT AGAINST THE COBBLES [DE 75].

While it is somewhat unclear from the Amended Complaint it appears that the Cobbles' specific claims against Chase relate to Chase allowing Sprint to debit two "unauthorized payments from the Account on January 29 and February 26, 2021 both for $60.92." While Chase refunded one of the charges, it did not refund the February charge. [DE 1-1 at 20]. Further, the Cobbles appear to claim that Chase unilaterally activated a recurring bill-pay feature in March 2021 without permission. [*Id.* at 20-22]. Although the Cobbles style their claims against Sprint and Chase as claims for "premeditated, felony offenses" of "conspiracy to commit fraud, banking fraud, and aggravated harassment" the substance of their allegations are for breach of contract. [DE 57 at 397].

Chase moves for summary judgment on several grounds. [DE 75]. First, Chase asserts that the Cobbles cannot meet their prima facie burden for any alleged tort claims and are precluded as a matter of law from raising tort claims based on a breach of contract. [*Id.* at 466]. Second, Chase asserts that Mrs. Cobble failed to notify Chase timely of the disputed Account charge as required

17

under the deposit agreement, and Mr. Cobble did not have the agency to do so or the standing to bring a legal claim against Chase. [*Id.*]. Lastly, the Cobbles cannot meet their prima facie burden in establishing a breach of contract claim against Chase, and, in the alternative, Chase is entitled to partial summary judgment on damages because the governing agreement contractually limits Chase's liability to the face value of the allegedly unauthorized item.

## A. Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* at 1435. A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, when

a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Id.* at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). The Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"Pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The fact that Plaintiff is pro se does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, 2010 WL 8738105, at *3 (6th Cir. 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x

482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001)

(affirming grant of summary judgment against a pro se plaintiff because he "failed to present any

evidence to defeat the government's motion").  However, statements in a verified complaint that

are based on personal knowledge may function as the equivalent of affidavit statements for

purposes of summary judgment.  *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000);

*Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### B. Analysis

#### 1. *Abandonment of Claims.*

As an initial matter, the Cobbles state in their response that "this case is not about recouping

the five unauthorized debit charges." [DE 77 at 634, ¶ B-1]. Instead, the Cobbles assert that their

claim against Chase is for "harassment." [*Id.*]. The Cobbles state that "Chase Bank was brought-

in after illegally initiating auto pay on Mrs. Cobble's bank account to debit from her closed, non-

existent T-Mobile account.  [*id.* at 634, ¶ B-3 (emphasis removed)].  The Cobbles do not address

any of the assertions, affidavits, or documents in regard to the alleged unauthorized debit charges

and rely almost entirely on the "legal admissions" they allege come from Sprint's "default."

Further, the Cobbles unpermitted surreply does not contest Chase's argument [DE 78 at 637] that

these claims have been abandoned.  [DE 79 at 648-49].

In the Sixth Circuit a plaintiff is deemed to have abandoned a claim when they fail to

address it in response to a motion for summary judgment. *Brown v. VHS of Michigan, Inc.*, 545 F.

App'x 368, 372 (6th Cir. 2013); *see Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th

Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a

plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of

Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond

properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24–25 (6th Cir. 2003). Here, not only do the Cobbles not respond to the substance of the claims regarding the five unauthorized debit charges, they appear to directly abandon them as a "misrepresentation" of their claims.  As the Cobbles make clear that the five unauthorized debit charges are not "what the case is [] about" and fail to dispute abandonment in their surreply, the Court may consider these claims abandoned at this summary judgment stage. However, out of an abundance of caution, the Court will address the merits of all claims.

2. *The Cobbles' Independent Tort Claims of Conspiracy, Fraud, and Harassment.*

The Cobbles assert that Chase had a duty to make only payments from the Account that were authorized, and that Chase breached this duty by making unauthorized payments to Sprint. Further, the Cobbles assert that Chase set up "bill pay" or "auto pay" without permission.  Any duty Chase has to the Cobbles regarding the Account, handling of unauthorized payments or the Accounts "bill pay" feature is governed by the DAA, which is the contract that governs the Account and the Cobbles' relationship with Chase. [DE 75-1, Exh. 1 at 485]. Mrs. Cobble agreed to the DAA, upon opening the Account when she signed the signature card and then at all subsequent times when she, or Mr. Cobble as her POA, used Chase's service. [DE 75-2 at ¶ 6, Exh. 1 at 512 and Exh 4 at 549].

"[W]here a contract exists, a tort claim may only be maintained on the basis of a legal duty that is 'separate and distinct from the contractual obligation.'" *Lewis v. Ceralvo Holdings, LLC*, No. 4:11-CV-00055-JHM, 2012 WL 32607, at *5 (W.D. Ky. Jan. 6, 2012) (quoting *Consolidated Rail Corp. v. Grand Trunk Western R.R. Co.*, 2009 WL 3460334, *6 (E.D. Mich. Oct.22, 2009)). In other words, "'[t]he failure to perform a contractual obligation typically does not give rise to a

cause of action in tort.'" *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. App. 2007) (quoting *Jones v. Hartford Life and Accident Ins. Co*., 443 F.Supp.2d 3, 5 (D.D.C. 2006)). *See also Rodrock v. Gumz*, 2012 WL 1424501, at *4 (W.D. Ky. Apr. 24, 2012); *First Const., LLC v. Gravelroad Entertainment, LLC*, 2008 WL 2038878, *5 (E.D. Ky. May 12, 2008); *Francis v. Nami Resources Co., LLC*, 2008 WL 852047, * 13–14 (E.D. Ky. Mar.28, 2008). Moreover, "when a plaintiff may obtain complete relief for his contractual losses by means of compensatory damages under a breach of contract claim, even when the breach is motivated by malice and accomplished through fraud, he may not simultaneously recover punitive damages after being made whole on his contractual damages." *Nami Res. Co. L.L.C. v. Asher Land & Min. Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018) (emphasis added). "'However, if a plaintiff can establish the existence of an independent legal duty, he may maintain an action in tort even though the acts complained of also constitute a breach of contract.'" *Mims*, 226 S.W.3d at 836 (quoting *Hartford Life and Accident Ins. Co*., 443 F.Supp.2d at 5).

Here, the Cobbles fail to allege any "breach of a duty arising independently of any contract duties between the parties." *Nami Res. Co.,* 554 S.W.3d at 336. As a result, any alleged tort claims must fail.

### 3. *The Cobbles have failed to meet their prima facie burden regarding the tort claims.*

#### a. Conspiracy

The Cobbles allege that Chase conspired with Sprint to commit fraud by enabling Sprint to deduct funds from the Account without the Cobbles' authorization. [DE 1-1, at 20; DE 34, at 311]. Chase asserts summary judgment is appropriate because the claim has not been pled with particularity and no evidence has been produced to support the Cobbles' claim despite adequate time for discovery. [DE 75 at 469].

A claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Ellington v. Fed. Home Loan Mortg. Corp.*, 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014) (quoting *Peoples Bank of Northern Ky., Inc. v. Crowe Chizek & Co., LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008)); *Clark v. Bucyrus International*, 2010 WL 996471, *3 (E.D. Ky. Mar. 17, 2010). "[T]he elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Brown v. Student Loan Xpress, Inc.*, 2012 WL 1029467, *10 (W.D. Ky. March 26, 2012). "'Importantly, however, civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" *Flint v. Coach House, Inc.*, 2013 WL 869649, *4 (Ky. App. March 8, 2013) (citing *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2010 WL 2696278, *13 (Ky. App. July 9, 2010)).

Additionally, a plaintiff must plead a conspiracy with particularity; vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *See Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) ("[C]onspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.") (internal quotation marks omitted); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, the Cobbles' allegation of conspiracy is wholly conclusory. The Cobbles' conspiracy claim fails to provide any evidence of an unlaw agreement between Chase and Sprint or that they intentionally acted in concert to harm the Cobbles. *See, e.g., Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 594 (Ky. 2021) (affirming dispositive relief to defendant on a conspiracy claim because plaintiff "failed to provide a factual basis of an agreement to act overtly unlawful") (cleaned up).  The Cobbles allege no facts and have provided no evidence to indicate that Chase conspired or formed a plan with Sprint to commit an unlawful goal. Thus, summary judgment is **GRANTED** as to any tort claim for conspiracy.

### b.  Fraud

While somewhat unclear, it appears that the Cobbles allege that Chase committed fraud by unilaterally enrolling Mrs. Cobbles' Account in Chase's bill-pay service in March 2021 after Mrs. Cobble's Sprint contract was terminated. [DE 1-1, at 21 (referencing "Chase's fraudulent auto-pay.")].  Chases asserts summary judgment is appropriate because the fraud has not been pled with particularity and there are no damages associated with this claim.  [DE 75 at 469].

Because a claim of fraud creates a "high risk of abusive litigation," *Twombly,* 550 U.S. at 569 n. 14, fraud or other claims that "sound in fraud" must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a party to "state with particularity . . . the circumstances constituting fraud or mistake." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024) (internal quotation marks omitted) (internal citation omitted) (quoting Fed. R. Civ. P. 9(b)). In general, that means that the plaintiff must specify (1) "what the fraudulent statements were"; (2) "who made them"; (3) "when and where the statements were made"; and (4) "why the statements were fraudulent." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir.

2012)); *V-Soft Consulting Grp., Inc. v. Logic Corp.*, No. 3:16-CV-425-DJH, 2017 WL 1228402, at *7 (W.D. Ky. Mar. 31, 2017) ("Rule 9 requires the plaintiff to plead the who, what, when, where, and how of the fraud." (citation omitted)). "A party claiming fraud must establish six elements by clear and convincing evidence: a) material representation, b) which is false, c) known to be false or recklessly made, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury." *Masssey v. Specialized Loan Servicing, LLC*, 2021 WL 311868, at *4 (W.D. Ky. Jan. 29, 2021) (citing *Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005)).

The Cobbles' only asserted evidence that a Chase set up an auto bill pay to Sprint is a screenshot of Mrs. Cobble's cellular telephone that is dated March 2021 and which shows a scheduled April 2021 payment to Sprint via Chase's mobile application. [DE 1-1, at 31–32]. The screenshot, however, does not indicate who scheduled the future payment or provide any evidence that Chase was the party that set it up on Mrs. Cobbles' account or that Chase did so with any intent to deceive as would be required to prove the elements of a claim for fraud.  To the contrary, Chase provided a sworn declaration from Marisela Ustica, Vice-President of Business Operations for Chase, stating that

> Chase re-occurring bill pay is a bill pay service that Chase offers as a feature on its Chase mobile application and online banking platforms.  An individual customer or authorized user must enable the re-occurring bill pay feature on his or her personal device, and the application is designed with numerous safeguards to prevent a customer or authorized user on an account from unknowingly scheduling a re-occurring bill pay.
>
> Chase does not apply re-occurring bill pay features to an account without authorization of the customer, as it is only self-service (meaning only initiated by the customer).

[DE 75-9 at 623].  The Cobbles provide no evidence to the contrary, despite ample time for discovery.

25

Most fatal to the Cobbles' claim, is that there is no evidence that Chase transferred any money from the Account in March or thereafter or that Chase made a knowing or reckless misrepresentation with the intent to deceive and upon which the Cobbles relied to their detriment. *See, e.g., Farmers Bank & Tr. Co.*, 171 S.W.3d at 11. "The principle is well-settled that '[f]raud without damage is, of course, not actionable.'" *Masssey, LLC*, 2021 WL 311868, at *4 (quoting *Curd v. Bethell*, 58 S.W.2d 261, 263 (Ky. 1932) (citation omitted)); *see also TWB Distrib., LLC v. BBL, Inc.*, 2009 WL 5103604, at *9 (W.D. Ky. Dec. 19, 2009). There is simply no evidence that there has been any damage to the Cobbles as a result of the alleged auto-pay enrollment after March, 2021. Thus, summary judgment is **GRANTED** as to any claim for fraud.

c.  Harassment

The Cobbles claim that they suffered "harassment" resulting from the alleged Chase bill-pay enrollment. [DE 1-1, at 20].  While there is no state law tort for "harassment," courts have interpreted these types of allegations as claims for the tort of outrage.  *See, e.g., Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 343 (Ky. 1986) (comparing the severe emotional distress or outrage, to the criminal charge of harassment).

To state a cause of action for the tort of outrage under Kentucky law, a plaintiff must show: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Effinger v. Philip Morris, Inc.,* 984 F. Supp. 1043, 1046 (W.D. Ky. 1997) (citing *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 2–3 (Ky.1990)). In *Seitz,* the Kentucky Supreme Court explained:

26

> It has not been enough that the defendant has acted with an intent which is tortious . . . or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Seitz,* 796 S.W.2d at 3 (quoting Restatement (Second) of Torts, § 46, comment d). *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 805–06 (6th Cir.1994); *Stump v. Wal–Mart Stores, Inc.,* 942 F.Supp. 347, 349 (E.D.Ky. 1996); *Whittington v. Whittington,* 766 S.W.2d 73 (Ky.App.1989); *but see Kroger Co. v. Willgruber,* 920 S.W.2d 61 (Ky.1996).

The Cobbles present no evidence that Chase acted intentionally or recklessly, was outrageous in character, went beyond the bounds or general standards of decency, or caused severe emotional distress to the Cobbles. While the Cobbles assert that Chase's conduct was harassing, there is no evidence that Chase ever contacted the Cobbles. Instead, the record reflects that Chase was contact by Mr. Cobble and responded accordingly, [DE 75-8, at Exh. 1 at 605-11 (Claim Notes)], and the Cobbles did not act in reliance on the Account's enrollment in Chase's bill-pay or suffer any harm as a result [DE 75-2, Exhibit B, at Exh. 2 (Account Statements)]. As a result, summary judgment is **GRANTED** as to any claim for outrage.

### 4. *The Cobbles' Breach of Contract Claims*

Chase asserts that summary judgment must be granted on the Cobbles' breach of contract claims because Mrs. Cobble failed to notify Chase of the disputed transactions within the time permitted under the DAA. [DE 75 at 471-73]. Under Kentucky law, there are three elements to a breach-of-contract claim: (1) "existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727

(Ky. Ct. App. 2007)). Chase asserts the Cobbles have failed to demonstrate a breach of contract or the ability to assert damages flowing from the alleged breach. [DE 75 at 471-75.].

The DAA requires that

[i]f your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time.

[DE 75-1, Exh. 1 at 493]. As a result, Chase argues that "Mrs. Cobble must both notify Chase of a disputed transaction within sixty days of the error appearing on her Account statement and bring suit within two years of the claim accruing." [DE 75 at 460; DE 75-1, Exh. 1 at 493, 504]. The DAA also limits Mrs. Cobble's damages for any unauthorized item "to the face amount of the item."[4] [DE 75-1, Exh. 1 at 501]. The Cobbles allege that the disputed transactions began in September 2020 [DE 1-1, at 6–9] but concede that Chase was not made aware of the disputed transactions until February 26, 2021, at the earliest. [DE 1-1, at 20]. As a result, the only two disputed transactions that could potentially fall within the sixty-day notice period are the January 2021 and February 2021 transactions. Yet, there is no dispute, and the record confirms that Chase credited the January transaction to the Account. [DE 75-8 at 602-03, ¶ 6].

Further, Chase argues that it has never been properly notified by Mrs. Cobble of any disputed transactions which is required under the DAA. [DE 75 at 471]. The only notifications received were from Mr. Cobble. Mr. Cobble, was not a joint owner of the Account, [DE 75-2, at 510, ¶ 7], but instead a POA, possessing only those "limited powers as defined by her nomination."

---

[4] Chase also asserts that even if the Court were to permit the breach of contract claims to move forward, the amount would be limited to the face value of the instrument. As set forth below, this would limit the Cobbles to the February transaction in the amount of $60.92. Moreover, the Amended Complaint specifically makes the request for the amounts of the disputed transactions from Sprint and not Chase. [DE 1-1 at 27].

[DE 75 at 460; DE 75-2, at 510, ¶ 6 and Exh. 3 at 545-46]. The powers conveyed by the POA included powers to:

> (1) execute and deliver any checks, drafts, withdrawals, or other instruments, or initiate any electronic instructions, for the payment of money from my accounts; (2) endorse any checks (except US Government), drafts, or other items payable to me, or to my order, and Bank is authorized to pay cash on any such items, or to accept them for deposit to any of my accounts without further inquiry or regard as to the use of said checks, or other items, or the proceeds thereof; (3) agree to a modification of the terms of any account; (4) receive bank statements, notices, similar documents, or other information regarding my accounts; and (5) request and agree to any additional services the agent believes appropriate relating to my accounts.

[DE 75-2, at 510, ¶ 6 and Exh. 3 at 545-46]. Chase asserts is that the POA "is not a general power of attorney and does not convey the powers to Mr. Cobble to either notify Chase of a claim against it or litigate on Mrs. Cobble's behalf." [DE 75 at 472].

Under Kentucky law, "an agent's authority under a power of attorney is to be construed with reference to the types of transaction expressly authorized in the document and subject always to the agent's duty to act with the 'utmost good faith.'" *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 790 (E.D. Ky. 2014) (citing *Ping v. Beverly Enterprises, Inc.,* 376 S.W.3d 581, 592 (Ky. 2012) (quoting *Wabner v. Black,* 7 S.W.3d 379, 381 (Ky. 1999))). Kentucky law also emphasizes that "POAs will be given a strict and narrow interpretation." *Golden Gate Nat'l Senior Care, LLC v. Dolan*, 579 S.W.3d 874, 879 (Ky. App. 2019). Here, the POA is limited and provides specifically enumerated powers. The power to dispute transactions or file legal causes of actions is not a specifically enumerated power under Mr. Cobbles' POA.

As a result, the Cobbles' contract claims related to the disputed transactions are barred under the terms of the DAA because Mrs. Cobble failed to notify Chase of the disputed transactions before filing suit against Chase and Mr. Cobble could not have been acting as her agent when he

contacted Chase about the disputed transactions. Mr. Cobble's independent claims also fail because his limited POA do not give him standing to sue on behalf of Mrs. Cobble.

As a final matter, the Court notes that even setting aside the requirements of the DAA, the Cobbles do not seek damages against Chase for the February 2021 charge, or any of the disputed transactions. Instead, the Cobbles seek these damages only from Sprint. [DE 1-1, at 27]. And even if sought against Chase, the DAA would limit them to compensatory damages in the face amount of the disputed item, here, $60.92 for the February transaction. However, the evidence in the record demonstrates that the Cobbles received a total of $339.15 ($278.23 from Sprint and $60.92 from Chase) in refunds and adjustments for the alleged disputed transactions totaling $243.68. [DE 75-5, at 570, 572; DE 75-6; DE 75-7, at 595, 597]. Thus, the Cobbles also fail to demonstrate any damages flowing from any alleged breach of contract.

For these reasons, there are no material facts in dispute as to the failure to properly notify Chase of the disputed transactions under the terms of the DAA and thus summary judgment is **GRANTED** as to breach of any contractual claims.

Further, given the circumstances of this case the Court finds so no just reason for delay in entering separate judgment in favor Chase on the Cobbles' claims against Chase. Fed. R. Civ. P. 54(b).[5] The Court will also order the Cobbles and Sprint to file status reports every six months while the stay is in place and shall file a motion with the Court to lift or remove the stay at the appropriate time.

## VIII.   CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Cobble's Motion for Default Judgment and Summary Judgment [DE 65; DE 66], Objection to the Magistrate Judge's July 15,

---

[5] The Cobbles' claims against Sprint remain stayed pending arbitration. [DE 57].

2024 Order [DE 73], Objection to the Court's March 12, 2025 Order regarding recusal [DE 85], and Objection to the Court's March 21, 2025 order regarding Sprint's response to the Notice of Default [DE 86] are **DENIED** and Chase's Motion for Summary Judgment [DE 75] is **GRANTED**. The Court will enter separate judgment in favor of Chase.

The Cobbles and Sprint shall file status reports on **November 6, 2025,** as to the status of arbitration and need for the stay and every six months thereafter while the stay is in place. Further, either party may file a motion to lift or remove the stay at the appropriate time.

Rebecca Grady Jennings, District Judge
United States District Court

May 9, 2025

cc:     Plaintiff, *pro se*
        Counsel of Record
4414.014